DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas which granted summary judgment to defendant-appellee, State Farm Mutual Automobile Insurance Company ("State Farm"), on the claim of plaintiffs-appellants, Carol Kotlarczyk, et al., for uninsured/underinsured ("UM/UIM") motorist benefits. From that judgment, appellant now raises the following assignments of error:
 {¶ 2} "Assignment of Error No. 1:
 {¶ 3} "The trial court erred in granting summary judgment for defendant State Farm on the issue of insurance coverage.
 {¶ 4} "Assignment of Error No. 2:
 {¶ 5} "The court erred in failing to grant summary judgment for plaintiff Carol M. Kotlarczyk on the issue of insurance coverage available from defendant State Farm."
 {¶ 6} The facts in this case are undisputed. On August 18, 1999, Michelle Kotlarczyk was killed in a car accident in Michigan. The accident was caused by the negligence of Wilburn Reeder, Jr. At the time of the accident, Michelle lived with her mother, appellant Carol Kotlarczyk,[1] and Michelle's two minor daughters, Taylor Kotlarczyk and Lauren Kotlarczyk, in Sylvania, Lucas County, Ohio. Michelle was the named insured under an automobile policy with State Farm, with UM/UIM coverage benefits of $100,000 per person/$300,000 per accident. Also at the time of the accident, Carol was the named insured under a separate automobile policy with State Farm, with UM/UIM coverage benefits of $100,000 per person/$300,000 per accident. Subsequently, the estate of Michelle Kotlarczyk received the policy limits of $100,000 from Reeder's insurer. After attorneys' fees, Taylor and Lauren Kotlarczyk each received $35,000 from that settlement. Carol received nothing.
 {¶ 7} On September 20, 2000, Carol, individually and as the legal custodian of Taylor and Lauren Kotlarczyk, filed a complaint for declaratory judgment in the court below against State Farm. Ultimately, a third amended complaint was filed. The plaintiffs were Carol Kotlarczyk, individually; Carol Kotlarczyk, as administratrix of the estate of Michelle Kotlarczyk; and Carol Kotlarczyk, as the legal custodian of Taylor and Lauren Kotlarczyk. In addition, several insurance companies were named as defendants in the action. Because the present appeal concerns only the trial court's grant of summary judgment to State Farm on Carol's claim for underinsured motorist benefits under her policy, we will only focus on the claims against State Farm. In the first claim, Carol alleged that Wilburn Reeder was an underinsured motorist at the time of the accident and sought a declaration that she was entitled to recover the UM/UIM policy limits of her automobile insurance policy with State Farm as damages for her daughter's wrongful death. In the second claim, all of the plaintiffs alleged that they were insureds under the State Farm policies issued to Carol and Michelle, and sought a declaration that they were entitled to the UM/UIM coverage benefits under Carol's policy for the wrongful death of Michelle and for loss of consortium.
 {¶ 8} Also on September 20, 2000, Carol Kotlarczyk, as administratrix of the estate of Michelle Kotlarczyk and as legal custodian and on behalf of Taylor and Lauren Kotlarczyk, filed a second action against State Farm. That complaint sought a declaration that plaintiffs were entitled to UM/UIM benefits under the State Farm policy of automobile insurance issued to Michelle. The trial court consolidated the two cases.
 {¶ 9} On November 5, 2001, State Farm filed a motion for summary judgment with regard to all of the claims against it. State Farm argued that under the anti-stacking provisions of Ohio law, appellants' wrongful death claims were to be considered a single claim for insurance purposes with a single per person benefit limit of $100,000. State Farm then argued that it was entitled to a setoff of the amount paid pursuant to Reeder's liability insurance policy, or $100,000. Accordingly, State Farm argued that it owed nothing to appellants and was entitled to summary judgment. Appellants responded with a memorandum in opposition to State Farm's summary judgment motion and their own motion for summary judgment. Appellants argued that Carol was entitled to recover $100,000 in underinsured motorist benefits from her automobile insurance policy with State Farm pursuant to the case of Wallace v. Balint (June 8, 2000), Cuyahoga App. No. 75953. Appellants acknowledged in their brief that the Wallace case was at that time pending before the Supreme Court of Ohio.
 {¶ 10} Subsequently, the Supreme Court of Ohio released its decision in Wallace v. Balint (2002), 94 Ohio St.3d 182, and the parties filed briefs before the lower court on the issues raised by that decision. Through these briefs, State Farm argued that Wallace did not operate to create coverage for appellants under the State Farm policies because the State Farm policy issued to Carol contained a valid "other owned vehicle" exclusion. State Farm then argued that the only coverage that was potentially available to appellants was that provided by Michelle's policy. Because, however, the UM/UIM limits of Michelle's policy were equal to the liability limits of Reeder's policy, State Farm argued that no coverage was available to appellants. Appellants countered that the "other owned vehicle" exclusion did not apply to this case.
 {¶ 11} On January 10, 2003, the lower court issued a decision and judgment entry which, in pertinent part, granted State Farm's motion for summary judgment and denied appellants' cross-motion for summary judgment. Initially, the court determined that because both policies at issue had valid anti-stacking language, and the limits of both policies' UM/UIM coverages were $100,000, appellants could only potentially collect up to the $100,000 limit under one of the State Farm policies. The court next concluded that because the amount available for payment from the tortfeasor's liability carrier was equal to the amount that would have been available for payment under Michelle's State Farm policy had Michelle been killed by an uninsured motorist, Michelle's beneficiaries were not entitled to underinsured motorist benefits under that State Farm policy. The court then found that the "Other Policies Issued By Us To You, Your Spouse or Any Relative" and "Other Similar Coverage" clauses of both policies precluded Michelle's beneficiaries from collecting underinsured motorist benefits under Carol's policy and precluded Carol from collecting underinsured motorist benefits under her own or Michelle's State Farm policy. Finally, because Lauren and Taylor Kotlarczyk were insureds under both Carol's and Michelle's State Farm policies, the court concluded that neither was entitled to underinsured motorist benefits under either of those policies.
 {¶ 12} Appellant now challenges those aspects of the trial court's judgment that denied her coverage under her policy with State Farm. She contends that the trial court erred in both granting State Farm summary judgment and in denying her own motion for summary judgment on the claims asserted against State Farm. Because the assignments of error are interrelated, we will address them together.
 {¶ 13} In reviewing a ruling on a motion for summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bankv. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue as to any material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 14} Appellant first asserts that the trial court erred in finding that the anti-stacking language in her policy precluded her from recovering underinsured motorist benefits under that policy.
 {¶ 15} Carol's policy of automobile insurance with State Farm provided uninsured motor vehicle coverage in pertinent part as follows: "We will pay damages for bodily injury an insured: 1. is legally entitled to collect from the owner or driver of an uninsured motor vehicle * * *. Thebodily injury must be sustained by an insured and caused by accident arising out of the operation, maintenance or use of an uninsured motorvehicle." The policy then defines an "uninsured motor vehicle" in pertinent part as: "1. a land motor vehicle, the ownership, maintenance or use of which is: * * * b. insured or bonded for bodily injury liability at the time of the accident; but * * * (2) the limits of liability: (a) are less than the limits you carry for uninsured motor vehicle coverage under this policy." Continuing, the policy defines an "insured" in part as "the person orpersons covered by uninsured motor vehicle coverage. This is: 1. the first person named in the declarations; * * * 3. theirrelatives; * * * 5. any person entitled to recover damages because ofbodily injury to an insured under 1 through 4 above." Accordingly, Carol, Michelle, Taylor, and Lauren Kotlarczyk all qualified as insureds under Carol's policy with State Farm. Moreover, pursuant to R.C. 2125.02, Carol, Lauren, and Taylor are each presumed to have suffered damages as a result of the wrongful death of Michelle.
 {¶ 16} The policy then includes language that purports to preclude intra-family stacking of policies. The policy reads: "If There Is OtherUninsured Motor Vehicle Coverage 1. Any and all stacking of uninsured motor vehicle coverage is precluded. 2. If Other Policies Issued By Us ToYou, Your Spouse or Any Relative Apply Subject to 1 above, if two or more motor vehicle liability policies issued by us to you, your spouse or anyrelative providing uninsured motor vehicle coverage apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability."
 {¶ 17} Appellant asserts that the lower court erred in concluding that this anti-stacking language precluded her from recovering benefits under her own policy with State Farm.
 {¶ 18} The Supreme Court of Ohio's most recent pronouncement on anti-stacking language is found in Wallace v. Balint, supra. In that case, James Wallace, Jr., died as a result of injuries sustained when his motorcycle collided with an automobile negligently driven by Dennis Balint. At the time of the accident, James lived with his parents, Wanda and James Wallace, Sr., and his siblings Christopher and Katrina Wallace. Also at the time of the accident, the following insurance policies were in place: Balint was insured under a policy of automobile liability insurance through State Farm with liability limits of $25,000 per person, $50,000 per accident; the decedent was the named insured under two policies of automobile liability insurance with State Farm, each providing UM/UIM coverage of $50,000 per person, $100,000 per accident; James Wallace, Sr. and Wanda Wallace together were the named insureds on four policies of insurance with State Farm, each providing UM/UIM coverage of $50,000 per person, $100,000 per accident; Christopher Wallace was the named insured on his separate policy of insurance with State Farm, that provided UM/UIM coverage of $50,000 per person, $100,000 per accident; and Katrina Wallace was the named insured on her separate policy of insurance with State Farm, with UM/UIM limits of $25,000 per person, $50,000 per accident. The court noted that, "[a]s family members living in the same household, each of the Wallaces qualified as insureds under each of their eight State Farm policies." Id. at 183. James Wallace, Sr., individually and as administrator of decedent's estate, Wanda Wallace, Christopher Wallace, and Katrina Wallace filed an action for personal injury and wrongful death against Balint and State Farm. Against State Farm, the Wallaces sought a total recovery of $800,000 under the terms of their combined underinsured motorist policies with State Farm. State Farm subsequently paid the decedent's estate $25,000, as the per-person limit of Balint's liability policy, and an additional $25,000, exhausting the underinsured motorist coverage limit on one of the decedent's two policies.
 {¶ 19} Applying former R.C. 3937.18(G)(2), the Supreme Court of Ohio held that the policies at issue contained valid anti-stacking language. The court then determined that "stacking occurs when one insured seeks coverage under more than one policy issued to himself or other family members." Id. at 186. The court continued: "If the estate, the parents, Christopher, and Katrina are each permitted coverage only under their own policy, then stacking never occurs, and the antistacking language is never operative." Id. The court concluded: "Based upon the foregoing, decedent's estate is precluded, pursuant to the antistacking provisions of decedent's policies, from recovering under decedent's second policy of underinsured motorist coverage. James and Wanda Wallace may recover benefits under only one underinsured motorist policy in which they are the named insureds and are precluded by the antistacking provisions of their policies from recovering under any additional underinsured motorist coverage. Christopher and Katrina may each recover under his or her separate underinsured motorist coverages." Id. at 187-188.
 {¶ 20} Applying the holding in Wallace to the facts of this case, it is clear that Michelle's estate and Carol had separate cognizable claims for underinsured motorist coverage under the two separate State Farm policies. As an insured under both policies, however, Carol could collect underinsured motorist benefits under only one policy.
 {¶ 21} State Farm asserts, however, that Wallace does not apply to this case because the policy at issue herein, Carol's policy, contained an "other owned vehicle" exclusion which was valid and enforceable pursuant to the H.B. 261 amendments to R.C. 3937.18. State Farm contends that because the policies at issue in Wallace were not subject to H.B. 261, they could not contain valid "other owned vehicle" exclusions.
 {¶ 22} It is well settled that "[f]or the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties."Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281, syllabus. Effective September 3, 1997, H.B. 261 amended former R.C. 3937.18, so as to include the following language authorizing so called "other owned auto" exclusions to UM/UIM policies of insurance. The version of that statute that applies to the case herein reads:
 {¶ 23} "(J) The coverages offered under division (A) of this section or selected in accordance with division (C) of this section may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:
 {¶ 24} "(1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured and underinsured motorist coverages are provided[.]"
 {¶ 25} In light of this statutory provision, Carol's policy with State Farm reads under the UM/UIM coverage portion of the policy: "THERE IS NO COVERAGE: * * * 2. FOR BODILY INJURY TO AN INSURED: a. WHILE OPERATING OROCCUPYING A MOTOR VEHICLE OWNED OR LEASED BY, FURNISHED TO, OR AVAILABLE FOR THE REGULAR USE OF YOU, YOUR SPOUSE OR ANY RELATIVE IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY."
 {¶ 26} State Farm contends that the exclusion at issue is authorized by former R.C. 3937.18(J) and that because Michelle was killed in a vehicle that was not insured under Carol's policy, Carol is precluded from recovering underinsured motorist benefits under that policy.
 {¶ 27} We begin by noting that R.C. 3937.18, is remedial legislation that must be liberally construed to give effect to its legislative purpose. Moore v. State Auto. Mut. Ins. Co. (2000), 88 Ohio St.3d 27, 31. "The purpose of uninsured motorist coverage is to protect persons from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated. * * * R.C. 2125.01 recognizes a cause of action for wrongful death and R.C. 2125.02(A)(1) acknowledges that parents of wrongful death victims are presumed to have suffered damages. Therefore, the parents of a wrongful death victim are legally entitled to recover damages from the tortfeasor responsible for their child's death." Id.
 {¶ 28} In the present case, Carol, is not seeking to recover for bodily injury to an insured. Rather, she is seeking to recover her own damages for the wrongful death of her daughter. As noted in Moore, such claims are clearly cognizable. Accordingly, former R.C. 3937.18(J) does not permit a UM/UIM policy to exclude from coverage damages caused to an insured by the wrongful death of a family member arising out of the use of an "other owned auto." The Third, Fourth, Seventh and Tenth District Courts of Appeals have all reached this same conclusion. See Estate ofMargaret Monnig v. Progressive Ins. Co., 4th Dist. No. 03CA9, 2004-Ohio-2028; Aldrich v. Pacific Indemnity Co., 7th Dist. No. 02 CO 54, 2004-Ohio-1546; Adams v. Crider, 3rd Dist. No. 10-02-18, 2004-Ohio-535; Dickerson v. State Farm Mut. Auto. Ins. Co., 3rd Dist. No. 4-03-12, 2003-Ohio-6704; Gaines v. State Farm Mut. Auto. Ins. Co.
(Apr. 30, 2002), Franklin App. No. 01AP-947. The cases cited by State Farm do not include fact scenarios under which an insured is attempting to collect UM/UIM benefits for damages caused to the insured by the wrongful death of a family member.
 {¶ 29} Accordingly, because the "other owned auto" exclusion in Carol's State Farm policy has not been triggered, State Farm was obligated to provide underinsured motorist coverage for the losses Carol sustained as a result of the wrongful death of her daughter.
 {¶ 30} Nevertheless, we further must determine what, if any, setoff State Farm is entitled to in light of the fact that Reeder's insurance carrier paid to Michelle's estate the limits of his liability policy, $100,000. The trial court concluded that given the anti-stacking language in both State Farm policies, Michelle's beneficiaries were only entitled to recover underinsured motorist benefits of $100,000 under one of those policies and that because State Farm was entitled to a setoff of $100,000 against the tortfeasor's liability policy, Carol was not entitled to collect any underinsured motorist benefits under either policy. For the following reasons, we disagree with the trial court's interpretation of the applicable law.
 {¶ 31} The version of R.C. 3937.18(A)(2) applicable to this case (i.e. as amended by H.B. 261) provides that no automobile liability or motor vehicle liability policy of insurance shall be issued in this state unless both uninsured and underinsured motorist coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds. The statute then reads:
 {¶ 32} "(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorists coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of theunderinsured motorist coverage shall be reduced by those amountsavailable for payment under all applicable bodily injury liability bondsand insurance policies covering persons liable to the insured." (Emphasis added.)
 {¶ 33} In light of this statutory provision, Carol's State Farm policy includes setoff language under the heading "Limits of Liability" in pertinent part as follows:
 {¶ 34} "1. The amount of coverage is shown on the declarations page under `Limits of Liability — U — Each Person, Each Accident.' Under `Each Person' is the amount of coverage for all damages arising out of and due to bodily injury to one person. `Bodily injury to one person' includes all injury and damages to others arising out of and resulting from thisbodily injury. Under `Each Accident' is the total amount of coverage, subject to the amount shown under `Each Person,' for all such damages arising out of and due to bodily injury to two or more persons in the same accident.
 {¶ 35} "2. Any payment made to a person under this coverage shall reduce any amount payable to that person under this bodily injury liability coverage.
 {¶ 36} "3. The limits of liability are not increased because:
 {¶ 37} "* * *
 {¶ 38} "b. more than one person is insured at the time of the accident.
 {¶ 39} "4. The maximum total amount payable to all insureds under this coverage is the difference between the `each accident' limits of liability of this coverage and the amount paid to all insureds by or for any person or organization who is or may be held legally liable for thebodily injury.
 {¶ 40} "Subject to the above, the most we pay for all damages arising out of and due to bodily injury to one person is the lesser of:
 {¶ 41} "1. the difference between the `each person' limits of liability of this coverage, and the amount paid for that bodily injury by or for any person or organization who is or may be held legally liable for the bodily injury; or
 {¶ 42} "2. the difference between the amount of damages for suchbodily injury, and the amount paid for that bodily injury by or for anyperson or organization who is or who may be held legally liable for thebodily injury."
 {¶ 43} We begin by noting that in Cordle v. Jackson (Jan. 18, 2002), Huron App. No. H-01-025, we found that a policy providing UM/UIM coverage that included "limits of liability" language identical to that in this case "unambiguously limits all claims arising out of the bodily injury of one person, including claims for consortium, to a single per person policy limit." Accordingly, whether the policy at issue is ambiguous is not at issue.
 {¶ 44} In Clark v. Scarpelli (2001), 91 Ohio St.3d 271, the Supreme Court of Ohio considered the meaning of the phrase "amounts available for payment" as set forth in R.C. 3937.18(A)(2) and held at the syllabus: "For the purpose of setoff, the `amounts available for payment' language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)." Clark involved a situation in which the decedent died as a result of injuries sustained in a one-car accident. The car was owned by appellant, the decedent's mother, and negligently driven by the tortfeasor. At the time of the accident, appellant maintained an automobile liability insurance policy with UM/UIM coverage limits of $100,000 per person, $300,000 per accident with Mid-Century Insurance Company. Appellant filed an action individually and as the administrator of her son's estate seeking wrongful death damages on behalf of herself and other statutory wrongful death beneficiaries and a declaratory judgment action against Mid-Century seeking underinsured motorist benefits. Subsequently, the tortfeasor's liability carrier settled with appellant for the $100,000 per person limit of the tortfeasor's liability policy. The trial court held, however, that because the per-person policy limit of the Mid-Century policy matched the per-person limit of the tortfeasor's automobile liability policy, appellant was not entitled to collect underinsured motorist benefits.
 {¶ 45} On appeal, the Supreme Court of Ohio examined the setoff provision of R.C. 3937.18(A)(2) and stated: "[i]t is clear that underinsured motorist coverage, as described in R.C. 3937.18(A)(2) as amended by S.B. 20, was not intended to be `excess insurance' to the tortfeasor's applicable automobile liability insurance. The language of the statute is unmistakable. The language of R.C. 3937.18(A)(2) also makes clear that the statute was intended to ensure that a person injured by an underinsured motorist should never be afforded greater protection than that which would have been available had the tortfeasor been uninsured." Id. at 276.[2] Furthermore, the court specifically rejected a "policy-limits-to-policy-limits" comparison approach for determining whether underinsured motorist coverage was available. The court noted, "[i]n circumstances involving matching limits and multiple claimants, if an insurer were able to set off payments made to injured parties other than its own insureds, in many if not most instances, an insured would receive no compensation from the tortfeasor and would also be unable to collect underinsured motorist benefits." Id. at 279.
 {¶ 46} Finally, the court in Clark addressed the applicability of R.C. 3937.18(H) to the facts of that case and stated: "* * * R.C.3937.18(H) permits automobile liability insurers to include provisions in their insurance policies that consolidate all individual wrongful death claims arising out of any one person's bodily injury into a single claim and thereby limit all wrongful death damages to a single per-person policy limit. This consolidation must affirmatively appear in the policy,i.e., insurers must include language within their policies of insurance that clearly and unambiguously consolidates such claims in order to give effect to such a limit." Id. at 282.
 {¶ 47} Applying its rationale to the facts of the case, the court inClark determined that appellant and the other wrongful death statutory beneficiaries were not entitled to underinsured motorist benefits under the Mid-Century policy. The court found that, consistent with R.C.3937.18(H), the Mid-Century policy clearly and unambiguously restricted all wrongful death claims to a single per-person policy limit. Id. at 284. The court then compared the amount available for payment, $100,000, which was also the amount actually received from the tortfeasor, to the single per-person limit of appellant's underinsured motorist coverage, $100,000. Because the single per-person policy limit did not exceed the amounts available for payment, the court held that the claimants were not entitled to coverage.
 {¶ 48} Shortly after Clark, the Supreme Court of Ohio released a series of decisions in Littrell v. Wigglesworth (2001), 91 Ohio St.3d 425, which applied the court's holding in Clark to the three separate factual scenarios provided by Littrell v. Wigglesworth, Stickney v. State FarmMut. Auto. Ins. Co., and Karr v. Borchardt. The court again stated that a policy-limits-to-policy-limits analysis was improper in determining whether a claimant was entitled to UM/UIM coverage. Rather, in general, the court determined that a UM/UIM carrier was not entitled to offset the limits of UM/UIM coverage available to its insured against amounts recovered by persons who were not insureds under the UM/UIM policy. Where, however, the insureds under the UM/UIM policy received payments from the tortfeasor equal to or in excess of the limits of their UM/UIM coverage, the insureds were not entitled to underinsured motorist benefits. Instructive in Littrell is the court's treatment of single-policy cases versus those cases involving multiple UM/UIM policies. In Cordle, supra, we summarized the Supreme Court of Ohio's application of Clark to those factual scenarios is as follows.
 {¶ 49} "* * * [I]n Littrell, there were five occupants of the Pratt minivan. The estate of the two occupants who died, and the remaining three occupants, received the entire limits of the tortfeasor's liability policy in divided amounts, totaling $1,300,000. Westfield provided UM coverage with a single policy limit of $500,000 per accident. All five occupants of the Pratt minivan were covered by this UM policy. The court held that the claimants were not entitled to UM coverage under the Westfield policy for the following reason: `Had the tortfeasor been an uninsured motorist, the maximum amount available to the five occupants of the Pratt minivan would have been $500,000. The amount available for payment from the tortfeasor was $1,300,000, which was paid to the claimants herein. As this amount exceeds the amount available from the Westfield policy, the occupants of the Pratt minivan are not entitled to underinsured motorist benefits from Westfield.'
 {¶ 50} "However, with respect to a grandson of one of the decedents, the court held that he was entitled to UM coverage under his own policy. Ernie Pratt had UM coverage with Allstate for $25,000 per person and $50,000 per accident. Ernie only received $8,000, in wrongful death proceeds, of the $275,000 paid by the tortfeasor, from his grandmother's estate. The court reasoned that had the grandmother's death resulted from an accident with an uninsured motorist, Ernie would have had UM coverage from his Allstate policy up to the $25,000 per person limit. As such, the court determined that Ernie was entitled to UM coverage up to the single, per person limit of his UM policy, less the $8,000 he received from the tortfeasor. The court specifically noted that it would be against the policy reasons set forth by the General Assembly to allow Allstate to offset the settlement from the tortfeasor against the limits of Ernie's UM policy when, in fact, those proceeds had been exhausted by payments to parties other than Allstate's own insured. Additionally, the court noted that Ernie was able to recover UM benefits because he had a separate contract of automobile liability insurance, unrelated to those held by the occupants of the Pratt minivan.
 {¶ 51} "In Stickney v. State Farm Mut. Auto. Ins. Co., also contained as part of the Littrell decision, the court found that no UM coverage was available under the following facts. The insureds' daughter was killed in an automobile accident. The decedent's father, the administrator of the decedent's estate, received $125,000 from the tortfeasor's liability carrier toward his damages resulting from the death of his daughter. The decedent's mother and the other children in the family received none of the settlement proceeds. There were two UM policies insuring the decedent's family with limits of $100,000 per person and $300,000 per accident. In its analysis, the court determined that the wrongful death beneficiaries would only have received a total of $100,000 had their losses resulted from the negligence of an uninsured motorist. As such, the court held that since the amount awarded to the decedent's personal representative for the benefit of the next of kin, $125,000, exceeded the amount which would have been available under the UM policy, $100,000, the wrongful death beneficiaries were not entitled to UM benefits.
 {¶ 52} "Similar to Ernie Pratt's situation above, the final case inLittrell, Karr v. Borchardt, involved UM claimants who, as wrongful death beneficiaries, had received a portion of the tortfeasor's $100,000 liability coverage. Each claimant concerned had their [sic] own separate policy, distinct from that of the decedent's. The claimants whose UM coverages exceeded the amounts they recovered from the tortfeasor received UM benefits; whereas, the claimant whose UM coverage was less than the amount she recovered from the tortfeasor received no UM benefits."
 {¶ 53} Applying the above principles to the current case, we begin by determining the amount Carol would have received in uninsured motorist benefits for the wrongful death of her daughter had Michelle been killed by an uninsured motorist. As we discussed above, pursuant to the Supreme Court of Ohio's decision in Wallace, Carol had a separate claim for the wrongful death of her daughter, which claim was not extinguished by the anti-stacking language of her State Farm policy. As such, had Michelle been killed by an uninsured motorist, Carol could have collected up to the $100,000 per-person limit in uninsured motorist coverage available under her State Farm policy. Because Carol received nothing from Michelle's estate's settlement with the tortfeasor, the tortfeasor was underinsured as to Carol and Carol has underinsured motorist coverage up to the per-person limit of her State Farm policy. Littrell at 435.
 {¶ 54} Accordingly, we must conclude that the trial court erred in granting State Farm summary judgment and in denying Carol summary judgment on her claim for underinsured motorist coverage under her State Farm policy. The assignments of error are therefore well-taken.
 {¶ 55} On consideration whereof, the court finds that substantial justice has not been done the party complaining and the judgment of the Lucas County Court of Common Pleas is reversed in part and to the extent discussed herein. This case is remanded to the trial court for the entry of judgment consistent with this decision. Court costs of this appeal are assessed to appellee.
Judgment reversed, in part.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Singer, J. concur.
Lanzinger, J., dissents.
[1] Because the issues in this appeal only involve Carol Kotlarczyk's claim for underinsured motorist benefits under her policy with State Farm, the term appellant will only refer to her throughout this decision although the notice of appeal was filed on behalf of all of the plaintiffs.
[2] Although the Supreme Court in Clark examined R.C. 3937.18(A)(2) as amended by S.B. 20, H.B. 261 did not alter the critical language of that statute that is at issue herein. Accordingly, Clark is equally applicable to cases such as this which apply the H.B. 261 amendments to R.C. 3937.18
to policies of UM/UIM coverage.