[Cite as *King v. Wachauf*, 2013-Ohio-2498.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY


SANDRA K. KING, EXECUTOR OF
THE ESTATE OF BARRY L. KING,

        CASE NO.  2-12-10

    PLAINTIFF-APPELLANT,

    v.

JENNIFER M. WACHAUF, ET AL.,        O P I N I O N

    DEFENDANTS-APPELLEES.


**Appeal from Auglaize County Common Pleas Court**
**Trial Court No. 2011 CV 0242**

**Judgment Affirmed**

**Date of Decision:  June 17, 2013**


APPEARANCES:

    *J. Alan Smith* **for Appellant**

    *Robert B. Fitzgerald*  **for Appellee, Hamilton Mutual Ins. Co.**

**PRESTON, P.J.**

{**¶1**} Plaintiff-appellant Sandra K. King ("Sandra"), the executor for the estate of Barry L. King, brings this appeal from the judgment of the Court of Common Pleas of Auglaize County granting summary judgment in favor of defendant-appellee, Hamilton Mutual Insurance Company ("Hamilton"). We affirm.

{**¶2**} On September 12, 2009, Sandra's husband, Barry L. King ("Barry"), was driving his motorcycle on County Road 25A. (Complaint, Doc. No. 1, ¶ 4). Defendant-appellee, Jennifer M. Wachauf ("Wachauf"), pulled into the path of Barry's motorcycle causing an accident. (*Id.*). Barry was injured and taken to a hospital for treatment where he subsequently died from his injuries on September 24, 2009. (*Id.* at ¶ 5-6, 12). At the time of the accident, both Barry and Sandra were named insureds on an automobile policy issued by Hamilton. (*Id.* at ¶ 17); (*Id.*, Ex. 1, attached). The policy provided underinsured motorists ("UIM") coverage. (*Id.*, Ex. 1, attached). Barry also had a motorcycle insurance policy through defendant-appellee, Progressive Specialty Insurance Co. ("Progressive") at the time of the accident. (*Id.*, Ex. 2, attached).

{**¶3**} On September 9, 2011, Sandra filed a complaint individually and as the executor of Barry's estate against Wachauf, John Does 1 and 2, Progressive,

and Hamilton. (*Id*.).[1] Sandra alleged Wachauf acted negligently and caused Barry's death. (*Id*. at ¶ 5-6). The suit claimed damages for personal injury, survivorship, loss of consortium, and wrongful death. (*Id*. at ¶ 5-9, 11-12). The suit also sought declaratory judgment against Progressive and Hamilton for coverage under the Un-insured/Underinsured Motorist ("UM/UIM") provisions of their insurance policies. (*Id*. at ¶ 15-20).

{¶4} Hamilton filed its answer on October 13, 2011. (Doc. No. 11). On February 8, 2012, Hamilton filed a motion for summary judgment arguing that the "other-owned auto exclusion" contained in their policy prohibited coverage in this case. (Doc. No. 25). The trial court granted Hamilton's motion for summary judgment on May 14, 2012 and certified the judgment as a final, appealable order pursuant to Civ.R. 54(B). (Doc. No. 38).

{¶5} Sandra filed a notice of appeal on May 31, 2012. (Doc. No. 42). Sandra now appeals raising the following assignment of error:

### Assignment of Error

**The trial court erred by granting summary judgment in favor of [Hamilton], because although the "Other-Owned Auto Exclusion" contained in the [Hamilton] policy would exclude UIM motorist coverage for [Barry's] claim for bodily injuries, the "Other-Owned Auto Exclusion" contained in the [Hamilton] policy is ambiguous and when construed in favor of the insured**

---

[1] This case was previously filed and assigned Auglaize County case no. 2010 CV 0341, which Sandra subsequently dismissed without prejudice. (Doc. No. 16). The trial court in the present case (2011 CV 0242) granted Hamilton's motion to transfer discovery, including Hamilton's previous motion for summary judgment, from the dismissed case to the present case. (Doc. No. 17-17A).

**[Sandra], does not exclude from UIM coverage her separate claims for common law loss of consortium and for benefits under the wrongful death statute where there is no evidence (or even an allegation) in the record that [Sandra], owned the motorcycle or that she "occupied" or was "struck by" the motorcycle involved in the accident.**

{¶6} The sole assignment of error challenges the granting of summary judgment. Specifically, Sandra argues that while the "other-owned automobile" exclusion prevents her husband, Barry, from recovering under the UIM portion of the Hamilton policy, it does not preclude her recovery. Sandra argues that the Hamilton UIM coverage language is ambiguous and subject to different interpretations, one of which entitles her to coverage. In particular, Sandra argues that she is an "insured" under the terms of the Hamilton policy legally entitled to recover from the owner/operator (Wachauf) of an underinsured motor vehicle for "bodily injury" sustained by "an insured," her husband, Barry. Sandra argues that an ambiguity must be interpreted to her benefit and against Hamilton as the drafter; and therefore, she is entitled to UIM coverage under the policy.

{¶7} When reviewing a motion for summary judgment, courts must proceed cautiously and award summary judgment only when appropriate. *Franks v. The Lima News*, 109 Ohio App.3d 408, 411-412 (3d Dist.1996). Before granting summary judgment, the court must determine that "(1) no genuine issues as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable

minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." Civ.R. 56(C); *State ex rel. Howard v. Ferreri*, 70 Ohio St.3d 587, 589 (1994). When reviewing the judgment of the trial court, an appellate court reviews the case de novo. *Franks* at 411-412, citing *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994).

{¶8} The issue in this case is whether the language of Hamilton's UIM coverage is ambiguous. "An insurance policy is a contract whose interpretation is a matter of law." *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St.3d 306, 2007-Ohio-4917, ¶ 7, citing *Sharonville v. Am. Employers Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, ¶ 6. To determine a contract's interpretation, a reviewing court must give effect to the parties' intent upon examination of the contract as a whole, guided by the presumption that the parties' intent is reflected by the language of the policy. *Id.*, citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11 and *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Cincinnati Ins. Co.* at ¶ 7, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus. A contract is

unambiguous as a matter of law if it can be given a definite legal meaning. *Id.*, citing *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex.2000).

{¶9} While ambiguity in an insurance contract is construed against the insurer and in favor of the insured, a court should not apply this rule if it results in an unreasonable interpretation of the words of the policy. *Cincinnati Ins. Co.* at ¶ 8, citing *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208 (1988), syllabus and *Morfoot v. Stake*, 174 Ohio St. 506 (1963), paragraph one of the syllabus.

{¶10} The Hamilton UIM coverage provides, in pertinent part:

**Insuring Agreement**

**A.   We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of *an* "underinsured motor vehicle" because of "bodily injury":**

**1.   Sustained by *an* "insured"; and**

**2.   Caused by an accident**

**The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".**

**\* \* \***

**B.   "Insured" as used in this endorsement means:**

**1.   You or any "family member".**

**2.   Any other person "occupying" "your covered auto".**

**3.    Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.**

**\* \* \***

**Exclusions**

 **A.  We do not provide Underinsured Motorists Coverage for "bodily injury" sustained:**

**1.    By an "insured" while "occupying", or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy.  This includes a trailer of any type used with that vehicle.**

**2.    By any "family member" while "occupying", or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.**

(Doc. No. 1, Ex. 1, Hamilton Policy, UIM Endorsement at 1-2)  (Emphasis added).

{¶11} For purposes of the summary judgment motion, Hamilton and Sandra stipulated to the following basic facts.  First, Wachauf negligently caused the accident.  Second, Barry was the sole owner of the motorcycle.  Third, the motorcycle was not covered by the Hamilton policy.  Fourth, Sandra was not a passenger on the motorcycle and was not struck by the motorcycle or Wachauf's vehicle.  Fifth and finally, the parties agreed that Barry would not be entitled to recover under the UIM policy because of the "other automobile exclusion."  The question is whether the UIM policy is ambiguous and would allow Sandra to recover under it.

{¶12} The Court of Appeals for the Sixth Appellate District was presented with a similar case in *Bailey v. Progressive Ins. Co., et al.*, 6th Dist. No. H-03-043, 2004-Ohio-4853. The husband in that case, like Barry herein, was injured while riding his motorcycle after being struck by another driver. *Id*. at ¶ 2. At the time of the accident, the husband's motorcycle was insured through Progressive, and Progressive paid the husband and wife the policy limit of $12,500.00. *Id*. at ¶ 3. The couple also sought UM/UIM coverage for the accident through their American Family Insurance Group automobile insurance policy, which covered a 1997 automobile. *Id*. The trial court granted American Family summary judgment on the couple's claim. *Id*. On appeal, the couple argued that the trial court erred in granting the summary judgment on the UM/UIM coverage claim under the American Family insurance policy. *Id*. at ¶ 12. The Court of Appeals disagreed, however, citing the policy's other-owned auto exclusion, which provided, in relevant part: "[t]his coverage does not apply to bodily injury to a person * * * [w]hile occupying, or when struck by, a motor vehicle that is not insured under this part, if it is owned by you or any member of your household." *Id*. at ¶ 15-16. The Court found that it was undisputed that the motorcycle was not a covered vehicle listed in the declarations page of the insurance policy; and therefore, pursuant to R.C. 3937.18 (as amended by S.B. 261, eff. 9-21-00), the

couple was barred from recovering by virtue of the other-owned auto exclusion under the UM/UIM portion of the insurance policy. *Id.* at ¶ 18.

**{¶13}** Likewise, the Court of Appeals for the Fifth Appellate District was presented with a similar case in *Siciliano v. Natl. Mut. Ins. Co.*, 5th Dist. No. 06CA61, 2007-Ohio-6508. The husband in that case, like Barry herein, died as a result of an accident while he was driving a motorcycle. *Id.* at ¶ 1. At the time of the accident, the husband was a named insured on an automobile policy issued by National Mutual Insurance Company, which had UM/UIM coverage. *Id.* at ¶ 2. The motorcycle the husband was driving at the time of the accident was not listed as a covered vehicle under this policy. *Id.* Like Sandra herein, the wife filed a wrongful death claim against the tortfeasor and declaratory action against National Mutual for coverage under the UM/UIM portion of the policy. *Id.* at ¶ 3. The trial court granted summary judgment in favor of National Mutual. *Id.* On appeal, the Court of Appeals determined that the wife was not entitled to UM/UIM coverage under the National Mutual insurance policy, because the husband was operating a motorcycle which was not covered under the policy, and the policy contained an other-owned automobile exclusion, which was valid and enforceable under R.C. 3937.18 (as amended by S.B. 97, eff. 10-31-01). *Id.* at ¶ 30-34.

**{¶14}** This Court was presented with an analogous case in *Tuohy v. Taylor*, 3d Dist. No. 4-06-23, 2007-Ohio-3597. In that case, a mother and father sought

UM/UIM coverage under their Westfield automobile insurance policy for the death of their son, who was driving a vehicle that was titled in his own name and not insured under his parents' automobile policy at the time of the accident. *Id*. at ¶ 1-2. The trial court granted summary judgment in favor of Westfield on the parents' claims. *Id*. at ¶ 5. On appeal the parents, like Sandra herein, argued that the policy's other-owned auto exclusion did not preclude *their* wrongful death claim. *Id*. at ¶ 11. Westfield, like Hamilton herein, argued that the parents' claims were barred under the other-owned automobile exclusion because their son was driving a vehicle not covered under their policy. *Id*. at ¶ 12. The language of the Westfield UM/UIM coverage was exactly the same as the language of the Hamilton UM/UIM coverage, and the other-owned exclusions were substantially similar. *Id*. at ¶ 18. After reviewing the policy language and relevant case law, including *Bailey* and Justice Lanzinger's dissent in *Kotlarczyk v. State Farm Mut. Auto. Ins. Co.*, 6th Dist. No. L-03-1103, 2004-Ohio-3447, we concluded that "[t]he exclusion clearly indicates that the parties intended the policy to limit coverage to the vehicles specifically covered under the insurance policy." *Id*. at ¶ 19. Since the son was operating a motorcycle that was not covered under his parents' insurance policy, we concluded "the 'other owned auto' exclusion * * * clearly and unambiguously precluded coverage of [the parents'] claims, individually, and the claim's [sic] of [the son's] estate." *Id*. at ¶ 24.

{¶15} Sandra has failed to persuade us that Hamilton's UM/UIM coverage is ambiguous. It is exactly the same language contained in Westfield's insurance policy we found unambiguous in *Touhy*. Furthermore, we believe that the other-owned auto exclusion clearly and unambiguously precludes coverage in this case. As the Ohio Supreme Court has more recently noted, "other-owned-auto exclusions that disclaim UM coverage represent a clear intent to limit coverage [to] bodily injuries incurred in 'the vehicles specifically covered under the insurance policy.'" *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, ¶ 26, quoting *Tuohy*, 2007-Ohio-3597, at ¶ 19 and citing *Kotlarczyk*, 2004-Ohio-3447, at ¶ 61 (Lanzinger, J., dissenting) ("The stated intent is to limit coverage to vehicles specifically identified to the policy"). Not only does this result align with the language of the insurance policy, it comports with common sense and the practice of the parties herein. Barry obtained separate insurance for his motorcycle through Progressive—evidence of the fact that Barry knew the motorcycle was not covered under his Hamilton *automobile* policy.[2]

{¶16} The cases Sandra relies upon are not persuasive. *Jones v. Progressive Preferred Ins. Co.* involved UM/UIM coverage language that was substantially different than the UM/UIM coverage language in the Hamilton policy, and *Jones*

---

[2] It is highly doubtful that motorcycles generally, let alone Barry's motorcycle, are even covered under the Hamilton policy since motorcycles are not included under the definition of a "newly acquired auto," and "[a]ny vehicle which: [h]as fewer than four wheels" is excluded from liability coverage. (Doc. No. 1, Ex. 1).

did not involve an other-owned auto exclusion like this case. 169 Ohio App.3d 291, 2006-Ohio-5420 (9th Dist.). While the UM/UIM language of the insurance policy in *Brunn v. Motorists Mut. Ins. Co.*, 5th Dist. No. 2005 CA 0022, 2006-Ohio-33, ¶ 31 was similar to the language in the Hamilton policy, the continuing validity of the Court's decision in *Brunn* is questionable following the Fifth District's more recent decision in *Siciliano*, *supra*. In fact, the dissenting judge in *Siciliano* relies, in part, upon *Brunn* in support of her position that the insurance policy is ambiguous. 2007-Ohio-6508, at ¶ 50. Aside from that, the reasoning of the leading author's opinion in *Brunn* is flawed since it relied upon cases that were decided under prior versions of R.C. 3937.18, including our decision in *Adams v. Crider*, 3d Dist. Nos. 10-02-18 and 10-02-19, 2004-Ohio-535, and cases that we have since rejected, like the majority opinion in *Kotlarczyk*, 2004-Ohio-3447.

{¶17} Likewise, *Aldrich v. Pacific Indemn. Co.* was decided under a prior version of R.C. 3937.17 when the validity of enforcing the other-owned auto exclusions to UM/UIM coverage was in question as it related to claims, such as wrongful death and loss of consortium claims, brought by insureds who were *not* occupying the "other-owned auto" at the time of the accident. 7th Dist. No. 02 CO 54, 2004-Ohio-1546. This explains why *Aldrich* relies upon decisions like ours in *Adams*, decided under the H.B. 261 version of R.C. 3937.18 (eff. 9-3-97), and the Ohio Supreme Court's decision in *Moore v. State Auto. Mut. Ins. Co.*, 88 Ohio

St.3d 27, 29-30 (2000). Just a few months after *Moore* was decided, however, the General Assembly amended R.C. 3937.18 by enacting H.B. 267 (eff. 9-21-00), to supersede the holding in *Moore*. H.B. 267, § 3. *See also Adams*, 2004-Ohio-535, ¶ 20, Fn. 7. More recently, the Ohio Supreme Court has determined that *Moore* should be limited to the 1994 S.B. 20 version of R.C. 3937.18. *Hedges v. Nationwide Mut. Ins. Co.*, 109 Ohio St.3d 70, 2006-Ohio-1926, syllabus.

{¶18} Finally, Sandra cites to *Am. Modern Home Ins. Co. v. Safeco Ins. Co. of Illinois*, 11th Dist. No. 2007-L-044, 2007-Ohio-6247. Admittedly, the facts of the case are analogous and the UM/UIM coverage language and other-owned auto exclusion in the insurance policy at issue in that case are identical to that provided in the Hamilton policy. However, we decline to follow *Am. Modern Home Ins. Co.* because it errantly relies upon *Jones*, *supra*, which did not involve an other-owned auto exclusion and had different policy language, and errantly relies upon *Aldrich*, *supra*, which we have already explained was based upon old case law. *Id.* at ¶ 44. Judge Grendell in her concurring opinion also relies upon *Brunn*, which has since been called into question and also involved a prior version of R.C. 3937.18, and *Willett v. GEICO Gen. Ins. Co.*, 10th Dist. No. 05AP-1264, 2006-Ohio-3957, which, in turn, relied upon *Brunn* and *Aldrich*. *Id.* at ¶ 49.

{¶19} Upon review of the Hamilton UIM coverage language and the other-auto exclusion, we conclude that Sandra is precluded from coverage because her

husband, Barry, was operating a vehicle that was not covered under the Hamilton policy ("other-owned automobile") at the time of the accident. Consequently, the trial court did not err in granting Hamilton's motion for summary judgment.

{¶20} Sandra's assignment of error is, therefore, overruled.

{¶21} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, J., concurs.**

**/jlr**

**WILLAMOWSKI, J., Concurring Separately.**

{¶22} I am writing separately because I fully agree with the majority that the contract before us is unambiguous. I concur that with the current direction of the case law, we can infer that the intent of the parties was to prevent recovery for any claim arising from an accident in an "other owned auto". However, this intent is inferred by the courts from the fact that the parties refused coverage for the other vehicle, not because the actual language of the contract states such. A review of the language of the contract itself specifies that coverage for bodily injury as a result of an accident while operating or occupying an "other owned auto" is excluded. The plain language of the contract does not specify that any

other claim, such as a wrongful death claim, is excluded.  The law, as correctly set forth by the majority, requires that the intent of the parties be determined from the language found within the four corners of the document.  See *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, *supra.*  As quoted by the majority, "[w]hen the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties."  *Id.* at ¶17.  Yet the current state of the law says that we can look at the "intent" of the parties from outside the contract to determine whether a contract interpretation is "unreasonable."  *Id.*  However, the idea of determining the "intent" of the parties to determine the reasonableness of holding a contract as written against the drafter, by its very nature requires us to look beyond the four corners of the document.  These ideas seem to be inconsistent and may need to be further examined by the Supreme Court of Ohio.  Having said that, I will follow the current status of the law and concur with the conclusion of the majority.