JONES, Exr., Appellee,

v.

PROGRESSIVE PREFERRED INSURANCE COMPANY, Appellant.

[Cite as *Jones v. Progressive Preferred Ins. Co.*, 169 Ohio App.3d 291, 2006-Ohio-5420.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 23107.

Decided Oct. 18, 2006.

Randall J. Moore and Marshal M. Pitchford, for appellee.

Richard M. Garner and David G. Utley, for appellant.

BOYLE, Judge.

{¶ 1} Appellant, Progressive Preferred Insurance Company, appeals from the judgment of the Summit County Court of Common Pleas awarding appellee, Constance Jones, $300,000 plus costs and interest. This court affirms in part and reverses in part.

I

{¶ 2} Appellee's husband, Owen Jones, was involved in an automobile collision with Nathaniel Kelly on November 12, 2002. Mr. Jones sustained injuries in the accident and died three days later, although there is some dispute between the parties as to whether the injuries from the accident proximately caused Mr. Jones's death. Mr. Kelly held an automobile liability policy with a $100,000 per person limit from Nationwide Insurance, and Owen and Constance Jones held an underinsured/uninsured motorist ("UM") policy from appellant, with a combined single limit of $300,000.

{¶ 3} Appellee, individually and in her capacity as executor for her husband's estate, filed three claims with Nationwide and Progressive: a wrongful-death claim for her husband, a survivorship claim for her husband for the three days that he survived after the accident, and an individual loss-of-consortium claim for

those three days. Nationwide settled all three claims, substantially exhausting the limits of the policy. On November 2, 2004, the Probate Court of Summit County approved the settlement. After payment of funeral and burial expenses, Medicare reimbursement, attorney fees, and case expenses, the remainder of $54,524.08 was allocated to the wrongful-death claim and divided among Mr. and Mrs. Jones's three adult children, who did not reside with them. Appellee received nothing.

{¶ 4} On December 6, 2004, appellee filed suit against appellant. Appellee filed a motion for partial summary judgment, arguing that appellant was not entitled to a setoff for the amounts that Nationwide paid to settle the wrongful-death claim. The trial judge granted the motion, and the case proceeded to a jury trial. The jury returned a verdict on October 17, 2005, finding that Mr. Kelly's negligence proximately caused Mr. Jones's death and awarding $20,000 for loss of consortium, $30,000 for the survivorship claim, and $300,000 for the wrongful-death claim. The court reduced the verdict to the policy limit of $300,000. The court also granted postjudgment interest from January 30, 2003—the date when appellee informed appellant of the possibility of a UM claim—at a rate of ten percent per annum from January 30, 2003, to June 2, 2004, and thereafter at the statutory variable rate set by the Ohio Department of Taxation pursuant to R.C. 5703.47. Appellant filed the present appeal, asserting three assignments of error.

II

A

First Assignment of Error

The trial court committed reversible error by refusing to allow appellant to setoff those amounts available for payment under the liability insurance covering the underinsured motorist responsible for the accident.

{¶ 5} In its first assignment of error, appellant argues that because the wrongful-death claim settled by Nationwide was brought on behalf of Mr. Jones, who was insured under appellant's policy, appellant is entitled to a setoff equal to the amount of Nationwide's settlement. Appellee responds that the UM policy, by its express terms, covers only those damages that an "insured person" is entitled to recover from the owner or operator of an uninsured or underinsured motor vehicle. Appellee contends that because the proceeds of the Nationwide settlement, through the probate proceedings, were paid only to appellee's children, who were not insured under appellant's policy, this settlement does not set off the amount that appellee, who was insured under the policy, is entitled to recover under the UM policy. Appellee further argues that the Nationwide settlement could only offset her UM coverage if her children, the beneficiaries of

the Nationwide settlement, were deemed to be "insured persons" under appellee's policy, which would be contrary to the express terms of the policy.

{¶ 6} The UM policy between appellant and appellee provides:

Subject to the Limits of Liability, if [Mr. and Mrs. Jones] pay a premium for Uninsured/Underinsured Motorist Bodily Injury Coverage, [Progressive] will pay for damages * * * which an insured person is entitled to recover from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle because of bodily injury:

1. sustained by the insured person;

2. caused by accident; and

3. arising out of the ownership, maintenance, or use of an uninsured motor vehicle or underinsured motor vehicle. (Emphasis omitted.)

{¶ 7} "When a personal representative of a decedent brings a wrongful death action seeking to recover damages on behalf of the beneficiaries, the personal representative pursues the recovery the decedent is no longer capable of pursuing." *Holt v. Grange Mut. Cas. Co.* (1997), 79 Ohio St.3d 401, 683 N.E.2d 1080, paragraph one of the syllabus. In such a case, the personal representative steps into the shoes of the decedent. Id. at 407, 683 N.E.2d 1080. Therefore, it is an insured person—the decedent, by way of his personal representative—who recovers in a wrongful-death case, even though individuals who are not covered by the UM insurance policy may ultimately recover as the statutory beneficiaries of the suit. Id. at paragraph two of the syllabus. It does not follow, as appellees assert, that the statutory beneficiaries become insured persons for the purposes of setoff merely because the personal representative, acting on behalf of the insured, allocates the settlement proceeds to an uninsured individual.

{¶ 8} In *Wickerham v. Progressive Ins. Cos.*, 166 Ohio App.3d 180, 2006-Ohio-964, 849 N.E.2d 1070, the Sixth District Court of Appeals held that money paid to a decedent's statutory beneficiaries by a tortfeasor's insurance company under a wrongful-death claim gave the decedent's UM insurance carrier a setoff right against the tortfeasor's insurance company, even though one of the beneficiaries was not insured under the policy. Id. at ¶ 18. The court held that because the decedent was insured under the policy, the amount recovered from the tortfeasor's insurance company for the decedent's wrongful-death claim offset the amount recoverable from the decedent's UM policy, even though not all of the wrongful-death beneficiaries were insured under the same policy. Id. at ¶ 11. Likewise, we believe that because Mr. Jones was insured under the policy, amounts recovered from Mr. Kelly's insurance company for Mr. Jones's wrongful-death claim offset the amounts available to him through his UM coverage, regardless of whether the beneficiaries are insured under the same policy.

{¶ 9} Furthermore, one of the basic principles of UM coverage is that the insured person should not recover more merely because he is injured by an underinsured tortfeasor rather than a tortfeasor with no insurance at all. *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 276, 744 N.E.2d 719. The purpose of UM coverage is to ensure that the insured person can, if necessary, recover an amount equal to the coverage—not in excess of the coverage—regardless of how little insurance the tortfeasor carries. Id. Under both the present version of R.C. 3937.18(C)—which was enacted in 2001, well before Mr. and Mrs. Jones's latest policy was signed on May 19, 2002—and R.C. 3937.18(A)(2) as it existed prior to the enactment of Am.Sub.S.B. No. 97, 124 Ohio Laws 44, the amount payable by a UM insurance policy must be reduced by the amount available for payment under the tortfeasor's liability insurance policy.

{¶ 10} In the present case, Mr. Jones had a $300,000 UM policy; therefore the maximum combined amount that he could recover from his own insurance policy and from Mr. Kelly's liability insurance policy was $300,000. The settlement with Nationwide was entirely allocated to Mr. Jones's wrongful-death claim, essentially making Mr. Jones—an insured person under appellant's policy—the claimant, even though appellee, as Mr. Jones's personal representative, made their children the sole beneficiaries under R.C. Chapter 2125. The recovery from Mr. Kelly's liability insurance policy still offsets the amount available under the UM policy just as though Mr. Jones had survived to bring his own personal injury suit rather than his wife bringing a wrongful-death claim in his name. Because the Nationwide settlement substantially exhausted Mr. Kelly's $100,000 of liability insurance and acted to offset the amount available from the UM policy, Mr. Jones may only recover from appellant the difference between the limits of his $300,000 UM policy and Mr. Kelly's policy, or $200,000.

{¶ 11} Appellee further argues that the $100,000 paid from Mr. Kelly's liability insurance does not constitute "amounts available for payment" under R.C. 3937.18(C) because Mr. and Mrs. Jones's children were the only beneficiaries who received the payments, while appellee, who was insured under the UM policy, took nothing. R.C. 3937.18(C) provides that the amounts payable under UM policies are to be reduced, or offset, by the amounts available for payment under a tortfeasor's liability insurance policies. Because only amounts available for payment to an insured person from a tortfeasor's liability insurance count toward an offset of the insured person's UM coverage, appellee argues, there can be no offset when an insured person—appellee, in this case—has not received any benefits from the tortfeasor's liability insurance.

{¶ 12} The term "amounts available for payment," as used in R.C. 3937.18(C), means "those amounts the insured actually recovers from a tortfeasor whose liability policy is subject to the claim of the insured and also to the claims

of other injured persons." *Clark*, 91 Ohio St.3d 271, 744 N.E.2d 719. Again, however, it must be remembered that even though Mr. Jones's wrongful-death beneficiaries were not insured under the Progressive policy, Mr. Jones was. The proceeds of Mr. Kelly's insurance were available to Mrs. Jones in her capacity as Mr. Jones's personal representative. It was his personal representative's decision, however, to allocate the entire amount to the couple's three children. The amount recoverable under Mr. Jones's UM policy must therefore be set off against the amount recovered from Mr. Kelly's liability policy. Appellant's first assignment of error is sustained.

B

Second Assignment of Error

The trial court committed reversible error by holding that appellee was entitled to uninsured/underinsured motorist coverage for her individual loss of consortium claim under the policy issued by appellant.

█ {¶ 13} Appellant next argues that the UM policy obligates it to pay only for damages incurred by an insured person who suffers "bodily injury." Because appellee was not injured, appellant argues, appellant has no obligation to cover her loss-of-consortium claim. Appellant points to Part III of the policy, which reads, "[W]e will pay for damages * * * which *an* insured person is entitled to recover * * * because of bodily injury * * * sustained by *the* insured person." (Emphasis omitted in part and added in part.) According to appellant, the use of the word "the" in the second reference to the "insured person" makes it clear that the insured person who is injured and the insured person who recovers damages under the policy must be the same person; thus, only the injured person can recover damages. Appellant argues that if the policy had been intended to pay benefits to other insured persons who did not suffer bodily injuries, the language would have referred to injuries sustained by "an" injured person or "any" injured person. Appellee responds that the language is "reasonably susceptible of more than one interpretation" and that when such ambiguity exists in an insurance contract, the language must be "construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus. Appellee argues that under such an interpretation, the two references to an "insured person" need not refer to the same person; it is possible for one person insured under the policy to suffer the bodily injury and another person insured under the same policy to recover the proceeds of the UM policy.

{¶ 14} We agree with appellee's argument that the passage is susceptible of multiple meanings. The policy defines an "insured person" as "you or a relative

[residing in the same household].” (Emphasis omitted.) The term “you,” as used in the policy, refers to “a person shown as a named insured on the Declarations Page [of the policy], and that person's spouse if residing in the same household.” (Emphasis omitted.) Appellant and her husband were both named on the Declarations Page; therefore, wherever the term “insured person” appears, either name—Mr. Jones or Mrs. Jones—could be inserted to replace that term. It is possible to read the passage in such a manner that “[appellant] will pay for damages * * * which [Mrs. Jones] is entitled to recover * * * because of bodily injury * * * sustained by [Mr. Jones].” Because we must construe the ambiguous language in favor of the insured and against the insurer, *King,* supra, we find that the policy language allows Mrs. Jones, as an insured person, to recover for loss of consortium even though it was Mr. Jones who suffered bodily injuries as a result of the accident. Appellant's second assignment of error is overruled.

## C

### Third Assignment of Error

The trial court committed reversible error in determining the applicable statutory prejudgment interest rate and accrual date to be applied to the uninsured/underinsured motorist coverage provided by appellant.

{¶ 15} Appellant finally argues that the trial court erred in granting prejudgment interest from the date when appellant learned of the possible UM claim—January 30, 2003—rather than the date when the jury returned its verdict—October 17, 2005. Appellant also argues that the trial court erred in granting interest at the rate of ten percent for interest accrued until June 2, 2004 and at the variable rate for interest accrued after that date. We consider these issues in turn.

### 1. Date when money became due and payable.

{¶ 16} R.C. 1343.03(A) provides:

[W]hen money becomes due and payable upon any * * * instrument of writing * * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

{¶ 17} A UM claim is treated as a contract claim, and in some prejudgment interest cases involving such claims, interest begins to accrue on the

date that a claimant applies for benefits. *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 341, 695 N.E.2d 1140. Whether prejudgment interest should be granted and when it should start to accrue is for the trial court to decide. Id. at 342, 695 N.E.2d 1140. The court may take into account whether, on the facts of the case, it is equitable to grant prejudgment interest. See id. at 341, 695 N.E.2d 1140. An appellate court reviews the trial court's decision to grant or deny prejudgment interest for an abuse of discretion. *Vilagi v. Allstate Indemn. Co.,* 9th Dist. No. 03CA008407, 2004-Ohio-4728, 2004 WL 1969402, at ¶ 21. An abuse of discretion is more than an error of law or judgment; rather, it is a finding that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Under this standard of review, an appellate court may not merely substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 18} We do not believe that the trial court abused its discretion in awarding prejudgment interest from January 30, 2003, when appellant was notified of a possible UM claim. In light of the disparity between the amount of the jury verdict and the amount of appellant's settlement offers, the undisputed fact of Mr. Kelly's responsibility for the accident, and the length of time that elapsed between the date when appellant was notified and the date of the verdict, the trial court could have reasonably determined that prejudgment interest began to accrue on that date.

{¶ 19} Appellant argues that under the terms of the contract, it had no liability on the UM policy until, at the earliest, November 4, 2004, when Nationwide settled the tort claim against Mr. Kelly. Only when the tort claim was settled, appellant argues, was the UM policy triggered; therefore the money could not have been due and owing at that time, and the trial court's application of prejudgment interest from January 30, 2003 was erroneous as a matter of law. Appellant did not raise this argument at the trial level or in his appellate brief, however, but only in his reply brief. We cannot say that the trial court abused its discretion in failing to consider an argument that appellant did not raise in a timely manner. The third assignment of error is therefore overruled as to the trial court's determination of when prejudgment interest began to accrue.

2. Applicable interest rates

{¶ 20} The language in R.C. 1343.03(A), providing for prejudgment interest rates to be determined according to the annual variable interest rate determined by the Ohio Department of Taxation pursuant to R.C. 5703.47, represents a change from the prior version of that statute, which set the interest rate at ten percent per annum. The change, embodied in Sub.H.B. No. 212, 125

Ohio Laws 63, took effect on June 2, 2004. The uncodified portion of H.B. 212 provides that for court actions pending on the effective date, interest would be awarded at the old statutory rate of ten percent per annum from the date when the money became payable until the effective date and would accrue at the new variable rates beginning on the effective date. The present action, however, was not pending on June 2, 2004. The money became payable on January 30, 2003, almost a year and a half before H.B. 212 took effect, but the complaint was filed on December 6, 2004, six months after H.B. 212 took effect. Appellant argues that the ten percent interest rate applies only to actions that had already been filed on June 2, 2004, and that for actions filed after that date, only the variable rate should be used, even if interest began to accrue before June 2, 2004. Appellee responds that whether or not the suit had been filed before the effective date for the variable rates, the ten percent statutory rate should apply for interest accrued between the date that it became due and June 2, 2004.

{¶ 21} The uncodified portion of H.B. 212 reads:

In the calculation of interest * * * *in actions pending on the effective date of this act,* the interest rate provided for in section 1343.03 of the Revised Code prior to the amendment of that section by this act shall apply up to the effective date of this act, and the interest rate provided for in section 1343.03 of the Revised Code as amended by this act shall apply on and after that effective date. (Emphasis added.)

{¶ 22} The legislature has specifically provided, in H.B. 212, that the ten percent statutory interest rate must be applied for prejudgment interest up to June 2, 2004, only in cases that were already pending on that date. The legislature has not provided for that rate to apply in cases that were not yet filed on that date. H.B. 212 revised the entire statutory interest scheme for cases filed after June 2, 2004. For all cases filed after that date, courts are obligated to apply the rate determined by the Ohio Department of Taxation pursuant to R.C. 5703.47 for each year in which interest accrued. Because this case was filed after June 2, 2004, the trial court should have applied the Department of Taxation rate schedule for the entire amount of prejudgment interest. Therefore, the trial court should have applied prejudgment interest at the rates set by the Department of Taxation for the year 2003 for all interest that accrued during the year 2003, and at the rates set for the year 2004 for all interest that accrued during the year 2004. It was erroneous to apply the ten percent statutory rate when the action was not filed when the new interest rate system went into effect. The third assignment of error is sustained as to the interest rates applicable for the period between January 30, 2003, and June 2, 2004.

## III

{¶ 23} Appellant's first assignment of error is sustained. Appellant's second assignment of error is overruled. Appellant's third assignment of error is sustained in part and overruled in part. This cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

WHITMORE, P.J., and MOORE, J., concur.