JOURNAL ENTRY AND OPINION
{¶ 1} We previously granted reconsideration of our opinion released on December 13, 2007 in this appeal, but then stayed the appeal pending the Ohio Supreme Court's decision in Advent v. Allstate Ins. Co., Nos. 2006-2271 and 2006-2393. On May 20, 2008, the Ohio Supreme Court issued its decision in Advent, Ohio St.3d ___, 2008-Ohio-2333. Accordingly, we now grant appellants' motion to lift the stay in this case and reconsider our previous decision. Upon reconsideration, we again affirm the trial court's judgment granting summary judgment in favor of the defendants-appellees, State Farm Insurance Companies and Allstate Insurance Company, on the claims of plaintiffs-appellants, Mary Kudla, Jean M. Kudla, Sharon Kudla Brady, and Mari Kudla Donnelly, for underinsured motorists' coverage.
 Procedural History {¶ 2} The complaint in this case was filed June 22, 2005, having been previously filed and dismissed. The 15 named plaintiffs included the wife, children, and grandchildren of decedent Thomas Kudla. The claims of all plaintiffs except the plaintiffs-appellants were dismissed with prejudice during the course of the proceedings below.
 {¶ 3} The complaint alleged that on June 27, 2002, Jean Kudla was operating a vehicle in which her father, Thomas Kudla, was a passenger when they were struck by another vehicle operated by Margaret Wendt. Thomas Kudla died as a result of injuries he sustained in this collision. Plaintiffs sought to recover against *Page 5 
Wendt for the wrongful death of Thomas Kudla and for bodily injuries to Jean Kudla. Plaintiff Mari Kudla Donnelly (the decedent's granddaughter) made a claim against her own automobile liability insurer, Allstate, pursuant to the UIM provisions of her policy for her loss of consortium with her grandfather. The remaining plaintiffs made claims for the same kinds of losses under the UIM coverage provided by various policies issued by State Farm. All defendants answered; State Farm and Allstate counterclaimed for a declaratory judgment regarding the coverage provided by their policies.[1]
 {¶ 4} Plaintiffs sought summary judgment regarding State Farm's and Allstate's contractual liability. Allstate and State Farm likewise sought summary judgment regarding their obligations under the UIM provisions of their policies. The court denied plaintiffs' motion and granted Allstate's, without opinion. Thereafter, the court granted State Farm's motion. Plaintiffs' appeal from these judgments was dismissed for lack of a final appealable order because the trial court did not declare the parties' rights and obligations under the various insurance policies.
 {¶ 5} The trial court then issued a judgment which determined that "no uninsured/underinsured motorist coverage is available to Plaintiffs based upon the undisputed facts. More specifically, this Court concludes inter alia that the remaining State Farm policies are subject to 2000 S.B. 267 (eff. September 21, 2000), which permits coverage forSexton/Moore to be excluded by the insuring agreement. *Page 6 Hedges v. Nationwide Mut. Ins. Co., 109 Ohio St.3d 70, 2006-Ohio-1926,846 N.E.2d 16. State Farm's policies sufficiently exclude these claims. This is the same reasoning this Court employed [in] granting the Motion for Summary Judgment of Defendant, Allstate Insurance Company, on January 10, 2006."
 {¶ 6} This appeal followed.
 {¶ 7} The relevant facts of this case are undisputed. Prior to the collision, Jean M. Kudla shared a home with her parents, Thomas (now deceased) and Mary Kudla. Jean Kudla was the named insured under two automobile liability insurance policies issued by appellee State Farm, one issued on March 2, 2002 and one issued on June 15, 2002, both of which had liability limits of $100,000 per person and $300,000 per accident with accompanying uninsured/underinsured motorist limits. Having settled their other claims in this case,[2] Jean Kudla and Mary Kudla (as an additional insured under Jean Kudla's policies) sought UIM coverage through the State Farm policies for their loss of consortium with the decedent. These are the claims that were at issue on the parties' cross-motions for summary judgment.
 {¶ 8} In addition to the two policies issued to Jean Kudla, State Farm also issued another policy of motor vehicle liability insurance to Sharon Kudla Brady, the decedent's granddaughter. The parties' motions for summary judgment also *Page 7 
addressed Sharon Kudla Brady's claim for UIM coverage under this State Farm policy for her loss of consortium with her grandfather.
 {¶ 9} Finally, Allstate issued a policy of motor vehicle liability insurance to Mari Kudla Donnelly, another granddaughter of the decedent. Mari Donnelly sought UIM coverage under this Allstate policy for her loss of consortium with her grandfather. The parties' motions for summary judgment also addressed this claim.
 {¶ 10} The relevant policy terms will be discussed below.
 Law and Analysis {¶ 11} We review the trial court's orders granting summary judgment de novo, applying the same standard of review the trial court used. "Pursuant to Civ. R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367,369, 1998-Ohio-389.
 {¶ 12} The terms of the Allstate policy and the State Farm policies include different terms and conditions, so we must analyze them separately. *Page 8 
 Allstate Policy (Mari Donnelly)
 {¶ 13} The evidence shows that Allstate initially issued a motor vehicle liability policy to plaintiff-appellant Mari Donnelly or her spouse on January 13, 1999. The original policy did not include express UIM coverage or a written rejection of such coverage; under the law in effect at that time, UIM coverage arose by operation of law. This coverage could not be terminated during the two-year guaranteed policy period under the version of R.C. 3937.31(A) in effect at that time.Wolfe v. Wolfe, 88 Ohio St.3d 246, 2000-Ohio-322. Thus, UIM coverage by operation of law was guaranteed through January 13, 2001.
 {¶ 14} Effective September 21, 2000, the Ohio legislature enacted S.B. 267. S.B. 267 amended R.C. 3937.31 by adding the following subsection (E):
 {¶ 15} "(E) Nothing in this section prohibits an insurer from incorporating into a policy any changes that are permitted or required by this section or other sections of the Revised Code at the beginning of any policy period within the two-year period set forth in division (A) of this section."
 {¶ 16} Effective October 31, 2001, in S.B. 97, the Ohio legislature amended R.C. 3937.18 to make the provision of uninsured motorists coverage permissive rather than mandatory, and eliminated the possibility of such coverage being implied by operation of law.
 {¶ 17} In Advent v. Allstate Ins. Co., the Ohio Supreme Court recently addressed a conflict among the courts of appeals as to whether an insurer could *Page 9 
incorporate the S.B. 97 amendments into a policy during a guarantee period which began after the effective date of S.B. 267 but before S.B. 97. The court found S.B. 267 allowed but did not require insurers to incorporate changes permitted or required by statute during a policy renewal period within a two-year guarantee period. The policy at issue in that case was renewed every six months during the two-year guarantee period; the provisions of S.B. 97 were incorporated into the policy during one of those renewal periods before the accident, through an "Important Notice" accompanying the renewal policy declarations. This notice stated that "the coverage limits you have chosen for Uninsured Motorists Insurance for Bodily Injury are less than your limits for Bodily Injury under Automobile Liability Insurance," and advised the insured to contact their agent if they wished to increase their limits. Thus, the court found, the (lower) stated limits for UIM coverage applied at the time of the accident.
 {¶ 18} Like the policy in Advent, the Allstate policy here was renewed every six months;[3] the last renewal before this collision was January 13, 2002. The copy of the insurance policy attached to Allstate's answer is for the policy period from January 13, 2002 to July 13, 2002. As in Advent, Allstate here included a notice *Page 10 
under the heading "Important Payment and Coverage Information" at page 4 of the policy declarations:
 "You have chosen not to purchase Uninsured Motorists Insurance for Bodily Injury. You can purchase Uninsured Motorists Insurance for Bodily Injury in amounts up to this policy's limits for Bodily Injury under Automobile Liability Insurance at any time by contacting your agent or by calling the Allstate Customer Information Center at 1-800-ALLSTATE (1-800-255-7828)."
 {¶ 19} We find that this notice contained sufficient information to put the insured on notice that their policy did not include UM/UIM coverage and that they should contact their insurer if they wanted to purchase such coverage. By failing to take any action, they consented to this change. Advent, at ¶ 18.
 {¶ 20} To summarize: the policy in this case did not expressly include UIM coverage. That coverage would have been provided by operation of law under the version of R.C. 3937.18 in existence prior to S.B. 97. The insurer specifically noted in the declaration pages of the January 13, 2002 renewal policy that the insured had chosen not to purchase uninsured motorists insurance, but could do so if the insured wished. This notice made clear to the insured that he or she did not have UIM coverage, effectively incorporating the provisions of S.B. 97 making the offer of UIM coverage permissive rather than mandatory. Therefore, we hold that S.B. 267 allowed Allstate to amend its policy to incorporate statutory changes effective after the beginning of the last two-year guarantee period and Allstate did so, incorporating S.B. 97 by making clear in the declaration pages that the insured did not have UIM *Page 11 
coverage. Consequently, the trial court correctly concluded that Allstate was entitled to judgment as a matter of law.
State Farm Policies (Jean and Mary Kudla and Sharon Kudla Brady)
 {¶ 21} The parties stipulated that State Farm issued two policies to Jean Kudla on March 12, 2002 and June 15, 2005. They further stipulated that State Farm issued a policy to Sharon Kudla Brady on February 3, 2002. These policies contained identical UIM provisions which provide coverage as follows:
 {¶ 22} "We will pay damages for bodily injury an insured:
 1. is legally entitled to collect from the owner or driver of the uninsured motor vehicle; or
 2. would have been legally entitled to collect except for the fact that the owner or driver of the uninsured motor vehicle has immunity under Chapter 2744 of the Ohio Revised Code or a diplomatic immunity.
 The bodily injury must be sustained by an insured and caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle."
 {¶ 23} Since Mary Kudla and the decedent, Thomas Kudla, resided with Jean Kudla, they were each an "insured" under the UIM coverage provided by Jean Kudla's policies.[4] However, the loss of consortium for which Jean and Mary Kudla seek compensation is not a "bodily injury." Cf., e.g., Lane v. Grange Mut. Cos. (1989), 45 Ohio St.3d 63, 65 (describing loss of consortium as a "nonbodily injury *Page 12 
claim"). Appellants argue that their loss of consortium claims arise from a bodily injury to Thomas Kudla, but this argument must fail because the policy does not cover damages "arising from" a bodily injury to an insured; it only covers "damages for bodily injury" "sustained by an insured." Therefore, the damages Mary and Jean Kudla seek for their loss of consortium with Thomas Kudla are not covered by the UIM portion of their policy.
 {¶ 24} This same analysis applies with even greater force to Sharon Brady's claim for loss of consortium under her own State Farm policy. Thomas Kudla was not an insured under her policy, so she cannot argue that her damages arose from a bodily injury to an insured. Loss of consortium is not a "bodily injury."
 {¶ 25} The statutory context of this case is substantially different from that in either Sexton v. State Farm Mut. Auto Ins. Co. (1982), 69 Ohio St.2d 432, Moore v. State Auto Mut. Ins. Co., 88 Ohio St.3d 27,2000-Ohio-264, Hedges v. Nationwide Mut. Ins. Co., 109 Ohio St.3d 70,2006-Ohio-1926, or Kotlarczyk v. State Farm Mut. Auto Ins. Co., Lucas App. No. L-03-1103, 2004-Ohio-3447. These cases involved different versions of R.C. 3937.18(A), but these versions were alike in that they all required the insurer to provide (or offer) UIM coverage in some form. The version of R.C. 3937.18(A) in effect at the time State Farm issued the policies in this case, however, did not require the insurer to provide UIM coverage at all. Rather, it allowed, but did not require, an insurer to provide uninsured and/or underinsured motorist coverage in a motor vehicle liability policy. Thus, there is no issue in this *Page 13 
case whether the coverage provided by these policies met the statutory requirements.
 {¶ 26} Appellant has asked this court to certify a conflict between our decision in this case and the decisions in Kotlarczyk, supra, andJones v. Progressive Pref. Ins. Co., 169 Ohio App.3d 291,2006-Ohio-5420. As noted above, however, the statutory context of theKotlarczyk cases was significantly different from that involved here. Moreover, we find critical differences between the policy language in this case and the policy language in Jones. Therefore, we deny the motion to certify a conflict.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., and MARY EILEEN KILBANE, J., CONCUR
[1] Allstate also filed a cross-claim against Wendt, but subsequently dismissed it.
[2] Wendt's insurance company paid its $50,000 policy limits to Thomas Kudla's estate, and also paid $45,000 for injuries to Jean Kudla. State Farm further paid Jean Kudla $20,000 for UIM coverage for bodily injuries she sustained in the collision.
[3] The Allstate policy in this case, like the Allstate policy inAdvent, defines a policy period as "[t]he policy period shown on the Policy Declarations." See Advent v. Allstate Ins. Co.,169 Ohio App.3d 319, 2006-Ohio-5522, ¶ 21-22. The policy period at issue in this case was a six-month period from January 13, 2002 to July 13, 2002. The policy was originally issued on January 13, 1999 and was renewed every six months thereafter.
[4] The policy defines a "relative" as a person related to the named insured by blood, marriage or adoption who resides with the named insured. The UIM coverage defines an insured as, inter alia, the named insured, his or her spouse, and their relatives. *Page 1