

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

CLEVELAND CONSTRUCTION, INC.,          Case No. 2003-10724

    Plaintiff,

    v.                                  Judge Joseph T. Clark

KENT STATE UNIVERSITY,

    Defendant.                        **DECISION**

{¶1} This case arises out of the construction of four residence halls at defendant, Kent State University (KSU). Plaintiff, Cleveland Construction, Inc. (CCI), brought this action alleging breach of contract. Defendant filed a counterclaim seeking damages for plaintiff's allegedly defective and incomplete work.

{¶2} On June 24, 2010, the Tenth District Court of Appeals issued a decision, affirming in part and reversing in part, this court's July 23, 2009 judgment in favor of plaintiff. On July 29, 2011, the court issued an entry approving the parties' July 26, 2011 stipulation and entered judgment in favor of plaintiff in the amount of $2,086,868.69, representing the undisputed contract balance and interest. The remaining issue in the case is now before the court.

{¶3} The court of appeals determined that "[b]ecause both waiver and failure to exhaust administrative remedies are affirmative defenses, [defendant] bore the burden of proving both defenses at trial." *Cleveland Constr., Inc. v. Kent State Univ.*, Franklin App. No.09AP-822, 2010-Ohio-2906, ¶48. On remand, the court must decide "whether [defendant] should prevail on its waiver and exhaustion of administrative remedies defenses given the evidence in the record." Id. The court of appeals noted "that [defendant] has only preserved these defenses against the breach of contract claims

arising from the weather and strike delay and the denial of change order requests 39/160, 44-R, 64, 93, 128, 148, 154 and 206." Id. at fn. 4.

**WAIVER**

{¶4} Defendant's waiver defense is based upon Article 8.1.1 of the General Conditions (GC) of the contract, which provides as follows:

{¶5} "Any claim against the State shall be made in writing to the Associate [Braun & Steidl Associates, Inc. (BSA)] and filed prior to Contract Completion, provided the Contractor notified the Associate no more than ten (10) days after the initial occurrence of the facts, which are the basis of the claim. To the fullest extent permitted by law, failure of the Contractor to timely provide such notice shall constitute a waiver by the Contractor of any claim for additional compensation or for mitigation of Liquidated Damages."

{¶6} According to the court of appeals, Article 8.1.1 "is unambiguous: CCI waived all claims for additional compensation that it did not file with BSA." Id. at ¶30. Therefore, the law of this case requires the court to determine which of plaintiff's claims were not filed with BSA.

**EXHAUSTION**

{¶7} The affirmative defense of exhaustion requires consideration of whether the administrative remedies that plaintiff commenced pursuant Article 8.1.1 were "exhausted" according to the procedures in Articles 8.2, 8.3, and 8.4. The Tenth District Court of Appeals noted that R.C. 153.12(B) "precludes a contractor from bringing a breach of contract action against the state unless 'administrative remedies provided for in [a public improvement] contract * * * are exhausted.' The administrative dispute resolution process detailed in Article 8 required CCI to first file all claims with the associate [8.1.1]. If the associate decided against CCI [8.2], then CCI could appeal the

associate's decision to the project administrator [8.3]. If the project administrator could not reach a mutually agreeable resolution of CCI's claim, CCI could appeal to the Office of the University Architect [8.4]. Kent State contends that it proved that CCI did not submit its delay and change order request claims through each step of the administrative dispute resolution process. Consequently, Kent State argues that R.C. 153.12(B) bars CCI from filing these claims in the Court of Claims." Id. at ¶28.

{¶8} R.C. 153.12(B) states in pertinent part:

{¶9} "If a dispute arises between the state and a contractor concerning the terms of a public improvement contract let by the state or concerning a breach of the contract, and *after administrative remedies* provided for in such contract and any alternative dispute resolution procedures provided in accordance with guidelines established by the director of administrative services are exhausted, the contractor may bring an action to the court of claims in accordance with Chapter 2743 of the Revised Code. * * * As used in this division, 'dispute' means a disagreement between the state and the contractor concerning a public improvement contract let by the state." (Emphasis added.)

{¶10} Furthermore, R.C. 153.16(B) sets a time limit for administrative procedures regarding claims made pursuant to a public works contract.

{¶11} R.C. 153.16(B) provides as follows:

{¶12} "Notwithstanding any contract provision to the contrary, any claim submitted under a public works contract that the state or any institution supported in whole or in part by the state enters into for any project subject to sections 153.01 to 153.11 of the Revised Code shall be resolved within one hundred twenty days. After the end of this one hundred twenty-day period, the contractor shall be deemed to have exhausted all administrative remedies for purposes of division (B) of section 153.12 of the Revised Code." See *Painting Co. v. Ohio State Univ.*, Franklin App. No. 09AP-78, 2009-Ohio-5710, ¶13-15. ("Under the terms of R.C. 153.12(B) and 153.16(B), plaintiff's cause of action for breach of contract accrued * * * when the 120-day period lapsed

after plaintiff's appeal to the State Architect, regardless of whether the State Architect subsequently issued a final decision on the validity of plaintiff's claims.")


**CHANGE ORDERS**

{¶13} Michael Bruder, defendant's project manager, testified extensively regarding the change order requests (COR) that were submitted by plaintiff. At the liability trial, counsel for defendant inquired as to Bruder's knowledge about each COR. During the examination on COR 44-R, counsel asked Bruder, for the first time, whether he recalled Article 8 processing. Bruder's testimony on these issues included the following:

{¶14} "Q. Do you know – incidentally, do you know whether Cleveland undertook any Article 8 procedures with respect to 44-R?

{¶15} "A. I don't know.

{¶16} "Q. Okay. Do you recall any Article 8 procedures?

{¶17} "A. *I recall that there were some requests for some Article 8s, yes.*

{¶18} "Q. With respect to Change Order Request 44-R, you don't recall any? And I'm going to ask you about Article 8s on every one of these.

{¶19} "A. I don't recall on this instance.

{¶20} "Q. You are a person at the University that – during some stage in the Article 8 process does review Article 8 requests; is that right?

{¶21} "A. That's correct.

{¶22} "Q. What is your role exactly?

{¶23} "A. The first stage is a hearing at the field level is what's specified, and that would be me." (Emphasis added.) (Liability Trial Transcript, pages 2337-2338.)

{¶24} Bruder specifically addressed Article 8 requests for CORs 64 and 93 during direct examination. Regarding COR 64, Bruder testified that plaintiff did not comply with

Article 8 filing requirements, and plaintiff concedes that defendant has met its burden of proving its waiver defense to that claim. As to COR 93, Bruder testified that defendant rejected plaintiff's Article 8 request inasmuch as "there's a requirement that the request be made within a certain time frame of the conflict, and that time had passed." (Liability Trial Transcript, page 237, lines 13-16.) Based upon Bruder's testimony, the court finds that defendant has met its burden of proof on both CORs 64 and 93.

{¶25} Plaintiff contends that there is no evidence in the record regarding COR Nos. 128, 148, 154, 206, and 39/160. Although counsel for defendant stated that she intended to examine Bruder as to Article 8 requests for each COR, defendant has not pointed to any testimony regarding Article 8 requests on those CORs. Rather, defendant relies on the following testimony of Jon Small, CCI's president, who explained CCI's failure to submit all claims for Article 8 review:

{¶26} "Q. Why did you not formally pursue those through the Article 8 procedures?

{¶27} "A. Well, the judge and jury on the Article 8 is basically Tom Euclide [the University Architect] and John Wheeler [BSA's representative], possibly Michael Bruder; they already had strong positions in it. We already knew what their positions were, it was a waste of time. It was – the process was judge and jury was aware of the job, they let their feeling known." (Liability Trial Transcript, page 476, lines 13-21.)

{¶28} Although Bruder and Euclide testified they did not recall Article 8 hearings, the court has previously found that "the evidence shows that plaintiff did submit certain claims for Article 8 processing." (Liability Decision, page 4.) Indeed, Bruder testified that plaintiff did submit some claims for Article 8 review. Based upon the evidence, the court finds that Small's testimony regarding plaintiff's reluctance to submit all claims through Article 8 processing was a general statement expressing plaintiff's belief that such review would be futile and that Small's testimony on this issue is insufficient to satisfy defendant's burden of proving the affirmative defense of waiver. Inasmuch as

defendant has failed to point to any evidence in the record regarding Article 8 requests for COR Nos. 128, 148, 154, 206[1], and 39/160[2], the court finds that it has not met its burden of proving its waiver defense on those claims.

**DELAY AND INEFFICIENCY**

{¶29} The testimony offered by defendant regarding delay and inefficiency was presented through numerous fact and expert witnesses. However, defendant has not identified any specific, substantive testimony on the issue of waiver. Although the evidence showed that Wheeler and Bruder were involved with the initial processing of Article 8 requests, the court is not aware of any testimony by either Wheeler or Bruder regarding plaintiff's failure to comply with Article 8 procedures related to delay and inefficiency. Similarly, defendant has not identified any testimony by Euclide regarding any specific non-compliance by plaintiff. Euclide testified that he did not recall resolving any Article 8 issues and he assumed that any such issues were "settled acceptably at the lower levels of review." (Liability Trial Transcript, page 2988, lines 12-20.) The court finds that such testimony is insufficient to satisfy defendant's burden of proof in establishing the affirmative defense of waiver.

{¶30} Furthermore, with regard to plaintiff's claims arising from both the denial of CORs and the weather and strike delays, defendant has not pointed to any testimony to

---

[1] At the liability trial, Bruder testified that COR 206 included items "that the University had agreed to pay for that would go back seven or eight months prior to this submission [that was rejected for being filed late]. The University did agree to pay for overtime work * * *." Bruder agreed that the discussion of COR 206 was "perhaps more appropriately taken up in the damages phase of the trial." (Liability Trial Transcript, page 2365, lines 8-24.) On September 18, 2008, the court approved the parties' September 3, 2008 stipulation, including the stipulation that the damages associated with COR 206 were $33,329.

[2] Regarding COR 39/160, Bruder testified as follows on direct examination by defendant's counsel:

"A. * * * So – so the University had agreed to pay for this work. The – the question was the quantities. The unit price was agreed to and I think that we could just verify the numbers, and this is work that was authorized.

"Q. Okay. So the – the question is how much you were going to pay and not whether you were going to pay for this particular additional work?

establish the defense of exhaustion of administrative remedies, whether by adverse decision or by failure to resolve a claim within one hundred twenty days pursuant to R.C. 153.16(B). For the reasons stated above, the court finds that Small's testimony is insufficient to satisfy defendant's burden of proving the affirmative defense of exhaustion of administrative remedies.

**SUMMARY OF DAMAGES**

{¶31} In summary, the court finds that plaintiff is entitled to damages in the amounts specified in the July 23, 2009 damages decision on plaintiff's claims for COR Nos. 39/160, 44-R, 128, 148, 154, and 206, and delay for weather and strikes:

{¶32} Plaintiff's change order requests:

| | |
|---|---|
| {¶33} 39/160 | 60,723.77 |
| {¶34} 44-R | 174,358.12 |
| {¶35} 128 | 21,100.00 |
| {¶36} 148 | 12,505.40 |
| {¶37} 154 | 56,675.00 |
| {¶38} 206 | 33,329.00 |
| {¶39} <u>Delay and inefficiency</u> | <u>1,205,718.00</u> |
| {¶40} Plaintiff's damages | $1,564,409.29 |

**PREJUDGMENT INTEREST**

{¶41} In the July 23, 2009 decision on damages, the court determined that the project was substantially complete in February 2004 and that plaintiff was entitled to prejudgment interest on the award of damages from March 1, 2004, to the date of the court's judgment entry. See *Royal Elec. Const. Corp. v. Ohio State Univ.*, 73 Ohio St.3d

---

"A. That's my understanding, correct." (Liability Trial Transcript, page 2380, lines 11-21.)

110, 117, 1995-Ohio-131*; Jones v. Progressive Preferred Ins. Co.*, 169 Ohio App.3d 291, 2006-Ohio-5420, ¶20.[3] Accordingly, plaintiff is entitled to prejudgment interest as follows:

{¶42} 93 days (03/01/2004 to 06/01/2004) at 10% of $1,564,409.29 = $ 39,860.29

{¶43} 213 days (06/02/2004 to 12/31/2004) at 4% of $1,564,409.29 = $ 36,517.17

{¶44} 365 days (01/01/2005 to 12/31/2005) at 5% of $1,564,409.29 = $ 78,220.46

{¶45} 365 days (01/01/2006 to 12/31/2006) at 6% of $1,564,409.29 = $ 93,864.56

{¶46} 365 days (01/01/2007 to 12/31/2007) at 8% of $1,564,409.29 = $125,152.74

{¶47} 365 days (01/01/2008 to 12/31/2008) at 8% of $1,564,409.29 = $125,152.74

{¶48} 365 days (01/01/2009 to 12/31/2009) at 5% of $1,564,409.29 = $ 78,220.46

{¶49} 365 days (01/01/2010 to 12/31/2010) at 4% of $1,564,409.29 = $ 62,576.37

{¶50} 313 days (01/01/2011 to 11/10/2011) at 4% of $1,564,409.29 = $ 53,661.38

{¶51} Total Prejudgment Interest                              = $693,226.17

---

[3] "The language in R.C. 1343.03(A), providing for prejudgment interest rates to be determined according to the annual variable interest rate determined by the Ohio Department of Taxation pursuant to R.C. 5703.47, represents a change from the prior version of that statute, which set the interest rate at ten percent per annum. The change, embodied in Sub.H.B. No. 212, 125 Ohio Laws 63, took effect on June 2, 2004." Id.

{¶52} Accordingly, judgment shall be rendered in favor of plaintiff in the amount of $2,257,660.46, which includes the filing fee paid by plaintiff.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

**CLEVELAND CONSTRUCTION, INC.,**      **Case No. 2003-10724**

    **Plaintiff,**

    **v.**      **Judge Joseph T. Clark**

**KENT STATE UNIVERSITY,**

    **Defendant.**      **JUDGMENT ENTRY**

{¶53} This case was remanded to determine whether defendant should prevail on its waiver and exhaustion of administrative remedies defenses given the evidence in the record.  The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of plaintiff in the amount $2,257,660.46, which includes the filing fee paid by plaintiff and prejudgment interest from March 1, 2004, to the date of journalization of this entry.  Court costs are assessed against defendant.  The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
JOSEPH T. CLARK
Judge

cc:

Brian Tackett
88 East Broad Street, Suite 1750
Columbus, Ohio 43215

Daniel R. Wireman
5390 Courseview Drive
Mason, Ohio 45040

David T. Patterson
10 West Broad Street, Suite 2400
Columbus, Ohio 43215-3469

Jon C. Walden
Lisa J. Conomy
William C. Becker
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Seth R. Price
191 Peachtree Street, N.E., 34th Floor
Atlanta, Georgia 30303-1747

Filed November 10, 2011
To S.C. reporter December 30, 2011